THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOWMAN DAIRY FARMS LLC, | ) | Case No. 17-06475-JMC-11 |
| | ) | |
| Debtor. | ) | |

**AFFIDAVIT OF TRENT BOWMAN IN SUPPORT OF FIRST DAY MOTIONS**

I, Trent Bowman, affirm under penalties of perjury the following:

1. I am a member and authorized officer of Bowman Dairy Farms LLC, the debtor and debtor-in-possession (the "Debtor") in the above-captioned case (this "Chapter 11 Case"). I submit this affidavit (this "Affidavit") in support of the various first day motions (the "First Day Motions") filed today.

2. I have reviewed the First Day Motions (including the exhibits thereto), and I believe the relief sought in each (a) is vital to enable the Debtor to make the transition to, and operate in, Chapter 11 with minimal interruption or disruption to the business or loss of productivity and (b) constitutes a critical element in achieving the Debtor's successful reorganization. Capitalized terms not defined herein have the meaning ascribed to such term in the relevant First Day Motion.

3. Except as otherwise indicated, all facts set forth in this Affidavit are based upon my personal knowledge, my review of relevant documents, my opinion, my experience, and knowledge of the Debtor's operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized on behalf of the Debtor to submit this Affidavit.

**DEBTOR BACKGROUND AND EVENTS LEADING TO CHAPTER 11 CASE**

4. The Debtor is a family-owned, member-managed Indiana limited liability company that operates a grain and dairy farm located at 2270 North County Road 900 East, Hagerstown, Indiana 47346. The member units in the Debtor are owned 50% by Trent Bowman and 50% by Bennie Bowman. The Debtor's milk is sold to Dean Foods for processing and Dean Foods pays the Debtor twice monthly for milk purchases and for hauling services.

5. The Debtor owns approximately 1400 acres, two commercial dairying operations, and cash leases approximately 2,000 acres. Pursuant to an appraisal in early 2017 procured by the Debtor's senior secured lender for lending purposes, the appraised value of the Debtor's owned real property and improvements is $14,100,000. The Debtor also owns and leases equipment and machinery for its operations. The owned equipment and machinery has an estimated value of $3 million with an estimated $1.3 million in purchase money loans against some of the owned equipment. The Debtor also has a small milk hauling operation that hauls the milk produced by the two commercial dairies. The Debtor has a small cattle feeding operation, where it primarily feeds out some of the bull calves from the dairies. Most of the Debtor's cattle feeding operation was closed out in early 2017.

6. The Debtor employs 26 persons. The average weekly payroll ranges between $20,500 and $25,400. I note that the Cash Collateral Motion indicated that the average payroll is $19,200, but the amounts stated here are more accurate. Payroll is processed on Wednesday through a payroll processor and payroll checks are delivered on Friday by the processor to the employees. The Debtor is current in all of its payroll taxes.

7. The Debtor's senior secured lender is Beacon Credit Union with an estimated total outstanding debt of $11,982,060. Beacon Credit Union has mortgages filed

against the Debtor's real property and improvements and secured financing statements against substantially all the assets of the Debtor.

8. The Debtor has a loan from St. Henry Bank with an outstanding balance of approximately $935,000. St. Henry Bank filed a secured financing statement asserting a lien in all equipment, inventory, and accounts receivable then existing and "hereafter acquired" of the Debtor for repayment.

9. In June of this year, Harvest Land Co-op, Inc. ("Harvest Land") filed a financing statement against substantially all the Debtor's assets to secure repayment of a prior year's outstanding debt. In addition, Harvest Land filed mortgages against the Debtor's real property for the same purpose. The amount owed to Harvest Land is approximately $560,000.

10. The severe fluctuations in milk prices beginning in 2015 and continuing have directly contributed to the Debtor's current circumstances of seeking relief under chapter 11 to restructure and reorganize its debts and business. In addition, certain decisions about cattle in the consumer marketplace affected beef cattle prices that required the Debtor to curtail its cattle feeding operations. Finally, grain prices fell to below production costs on some of the grain production, causing further financial distress.

11. Notwithstanding the Debtor's financial distress, the Debtor is current in all of its tax payments (other than immediately preceding tax payments) and is on average less than 60 days behind in its payments to creditors. The Debtor needs relief to be able to assess its business, liquidate underperforming assets to reduce its secured debt, and potentially seek an investment partner to provide capital improvements. The Debtor is also examining its executory contracts and leases to determine which may no longer be in the best interests of the Debtor, its business, and the estate.

12. The Debtor intends to continue to operate its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**FIRST DAY MOTIONS**

A.  *Cash Collateral Motion*

13. I have reviewed the Debtor's *First Day Motion for Order Authorizing Use of Cash Collateral and Requesting Preliminary and Final Hearing* (the "Cash Collateral Motion") and support the Debtor's application for authority to use cash collateral, to the extent Beacon Credit Union holds a valid lien, on the terms and conditions contained in the Cash Collateral Motion.

14. Based on my review of the Cash Collateral Motion and subject to the approval of the Bankruptcy Court as required, I understand that the Debtor proposes to offer replacement liens in all postpetition assets of the Debtor of the same kind and character as the assets in which Beacon Credit Union held a prepetition security interest to the extent of any diminution of the cash and cash equivalents in which Beacon Credit Union held a security interest prior to the Petition Date.

15. I believe that the relief requested in the Cash Collateral Motion is essential to the continued operation of the Debtor's business and a successful reorganization. The Debtor is proposing to pay only those usual and customary expenses of feed, labor, supplies, and veterinary goods and services to preserve the value of the Debtor's business and ensure the safety of employees and live animals. The Initial Budget also includes amounts the Debtor is seeking authority to pay, representing certain prepetition wages and associated payroll taxes.

B.  *Motion to Pay Prepetition Wages and Associated Payroll Taxes*

16. I have reviewed the Debtor's *First Day Motion to Pay Certain Prepetition Claims, Including Wages and Associated Payroll Taxes* (the "Wages Motion").

17. Based upon my review of the Wages Motion, it is my understanding that the Debtor is requesting the Court to enter an order authorizing, but not directing, the Debtor to pay or otherwise honor certain prepetition wages, salaries, and expense reimbursements owing to current employees (the "Employee Obligations"), and other prepetition obligations, including the taxes associated with those payrolls (the "Payroll Taxes").

18. The Debtor is also seeking the entry of an order directing all banks and other financial institutions to honor the Debtor's prepetition checks for payment of the Employee Obligations and prohibiting banks from placing any holds on, or attempting to reverse, any automatic transfers to employees' accounts for Employee Obligations and Payroll Taxes.

19. I believe that the relief requested in the Wages Motion is necessary because employees are vital to the continued operation of the Debtor's business and to a successful reorganization. To retain employees and maintain morale, I believe that the Debtor must have authority to pay or otherwise satisfy the Employee Obligations. The amounts to be paid to employees pursuant to the Wages Motion are reasonable compared with the importance and necessity of the employees and the losses the Debtor will likely suffer if these amounts are not paid. All of the unpaid wages are attributable to work performed by the Debtor's employees during the 180 days immediately preceding the Petition Date. None of the requested amounts to be paid per individual employee total more than $12,850 which I understand to be the priority amount provided to these types of claims under sections 507(a)(4) and (5) of the Bankruptcy Code.

20. Similarly, I believe that the Debtor should be granted authority to pay the Payroll Taxes. The Debtor is current in all its payroll tax payments.

21. I believe that granting the relief requested will enhance the likelihood of the successful rehabilitation of the Debtor and the probability of maximizing the value of estate assets and, ultimately, the return to creditors.

FURTHER AFFIANT SAYETH NOT.

Pursuant to 26 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on August 29, 2017 at Hagerstown, Indiana.

By: *(signature)*
Printed: Trent Bowman
Title: Member